Case 20-5016 David Bohler v. City of Fairview TN et al. For argument not to exceed 15 minutes for the appellant, 15 minutes to be shared by the appellees. Mr. Justice for the appellant. Good morning, your honors. I'm Drew Justice for the plaintiff appellant David Bohler. I'll reserve four minutes for rebuttal. May it please the court, this is the appeal about whether police officers have the right to report the misconduct of other officers in their department to public officials outside their department. In a nutshell, what happened in this case was that the plaintiff David Bohler came across some information by chance that tended to show that an investigation and prosecution carried out by his department had been carried out under unseemly and arguably criminal circumstances. And basically those circumstances involved retaliatory conduct by the vice mayor's son who was also the assistant chief on behalf of his friend in retaliation for civil litigation. And what happened was when Mr. Bohler came across this information, he tried, he first tried to report it to the higher-ups within his department, within his chain of command, and that he did have an ordinary job duty to do. But the problem was they didn't take it very seriously. They seemed to be ignoring it. So at that point, Mr. Bohler stepped outside his department and voluntarily reported the same information to the elected district attorney. In essence, what he was doing was he was sabotaging another officer's... Mr. Justice, can you, I would suggest maybe that you focus in on what your main arguments are in terms of what you're asking us to do and what you, what relief you think you are entitled to. Well, our relief is that we're asking the court to overturn the summary judgment against the plaintiff. And we would submit that the district judge was basically just wrong on the law and she misapplied the facts that are in the record and wrongly granted summary judgment. Counsel, the points you're making, was that a windup to your retaliation claim or to one of your other claims? I'm sorry, that was for the retaliation claim. And that was the one that I had planned to focus on for oral argument. And so is your point that it was outside his job duties to report to the prosecutor? Is that the point? Yes, sir. Yes, your honor. And essentially, I mean, obviously your honors are familiar with the law. You know that the key question is, did he speak as a citizen or as an employee? When making that determination, the court typically looks at a number of different factors, the bulk of which support the plaintiff's position in this case, that he did speak freely as a citizen. I mean, I would think in the ordinary job duty of an officer, talking to a prosecuting attorney would be a somewhat regular function. If there's a case the officer's involved in, the prosecuting attorney needs facts, that person might become a witness, that officer might become a witness at the case. So that seems like a pretty customary duty that an officer would have. Well, something about this case that makes it a little bit different? I mean, one thing about this case that makes it different is that it was not the officer's case and it was not a case that he was involved in at all. And specifically, he was intervening in another officer's case in order to basically sabotage that case and in order to get a case dismissed that he felt was scandalous. Well, hadn't he been asked to review it? Wasn't he asked to That's not really correct, your honor. And there's been a little bit of confusion. I submit that the city has inaccurately summarized some of the facts in their brief. And it's an expansive case. I guess it's conceivable that they're just confused about some of these things. But no, he was not asked to review the case. He was asked to pull some documents. And I think he said a few different cases, three or four different cases. And so it wasn't a matter of reviewing anything. It wasn't a matter of being asked to investigate anything. As he testified, not only was he not asked to investigate anything, but he basically did not investigate anything. This was all just information, as I said, that he stumbled upon by chance. And that's what makes this case analogous to the case of Handy Clay versus City of Memphis. In that case, the court found that were especially relevant in finding that this was citizen speech instead of employee speech. They asked, basically, did the employer ask the employee to investigate the matter in question? Did the employer ask the employee to give his opinion, give her opinions? And did the employee speak inside the chain of command? And in that case, all three answers were no. And in this present case, all three answers were no. But isn't the type of employee a key distinction here? I mean, in Handy Clay, she was a records clerk, right? I mean, I guess this gets back to, and maybe it's just begging the question, I don't know. But I mean, this officer is a detective. He investigates. That's what he gets paid to do. He's expected to do. I don't know. I mean, why would that not distinguish this from that case? Well, again, he testified that he did not investigate in this case and was not asked to investigate. Further, he testified that his general orders prohibit him from performing an unsanctioned investigation. And his general orders do specifically require him to report misconduct of other police officers to the higher-ups in his chain of command, but nothing else. So he was engaging in his own misconduct by conducting this kind of extra investigation? Well, I mean, I guess that could be argued, but he testified that it would not fall under misconduct because it was not an investigation. Essentially, all that happened was a friend of a friend called him up while he was at home, was complaining about some things in the apartment. He tried to look at the police report about that case to see what the man was talking about. Couldn't find it. Mr. Justice, if I might interrupt, one of the things that concerns me is the public concern branch of this. And both sides seem to be tiptoeing around to what really happened. First of all, was Hamilton actually charged? He was charged and he was a few weeks away from trial, I believe, when this happened. What was the offense? Possession of a gun by a felon under Tennessee law. How about giving me your version of what your client thought was going on between this Mark, I can't remember, Sutton, was that his name? And Anderson and Hamilton. He thought that this was a case of a private friend enlisting, drafting his police officer friends to help him retaliate for civil litigation, which would be a... So how did he retaliate? By initiating this criminal investigation into something that they didn't have any, any knowledge of falsifying police reports. There was there was also some issues about coercing. I'm sorry. There's so much tiptoeing around here by the city also. Let me ask you this. Would it be, would I be correct in saying the misconduct of Mark Sutton, if that's his name, is urging Anderson to pay off his rent owed to Hamilton with a gun? The misconduct was was initiating this entire case under false pretenses. And also, as I was starting to say, there was some coercion involved in even getting this man to the to the station telling him he wouldn't be prosecuted, that sort of thing. He told... So is, is Bowler's testimony correct in his deposition that Anderson paid the rent due to Hamilton with a gun? I believe so. Yes, sir. Yes, your honor. Well, and was was Mark involved in that decision to pay the rent with a gun? No, no, your honor. And I don't think anyone is arguing that this man was actually innocent, or that Mr. Bowler felt he was innocent. He just felt that he had been procedurally railroaded in retaliation for some things. And like I said, that there was a false police report, and that there was some coercion and gathering the evidence, you know, telling him he would not be prosecuted and then prosecuting him that sort of thing. So, but ultimately, you know, in answer to your honor's concern, I mean, whether this was a matter of public concern, that's really not even on a on appeal. I think that the district judge found that it was a matter of public concern. The city never even challenged that. And so that's really not in dispute, at least not at this point at trial, if it gets to trial that it may be. And I will apologize, I, I tried to start this clock that they gave us to looks like I'm running out of time. I will just say this case is analogous to the case of Barrow versus city of Hillview. And that's a case where there was also a police officer. And he was found to have spoken as a citizen because he didn't, even though they said a police officer in general may have some sort of a duty to fight crime. He was speaking specifically outside against his own department, to an outside authority outside of the chain of command. Can I ask about your defamation claim before you before your time runs out? Sure. So the basis for actual malice is the argument that your client was taking, taking leave time without reporting it, basically, but wasn't there wasn't there at least some indication that perhaps he wasn't recording his, his, his leave time. And that and, you know, a fair observer might might think that, in fact, I think he, he, he was working a couple of hours, I think maybe to satisfy the lead policy, but wasn't it isn't it couldn't someone have at least mistakenly or fairly or someone honestly, or just negligently thought that he was he wasn't in compliance with the policy? Well, under the specific context of this case, where they were just trying with these two men were trying to just bow bad mouth, all sorts of other police officers. It certainly seemed reckless in actuality. And I would just admit that that that it rises to the level of recklessness that it's not it's not negligent. And with that, I'll come back for rebuttal. Thank you all. Thank you, counsel, you'll have your four minutes of rebuttal. We will hear from I think the city first. Good morning, your honors. May it please the court Cassandra Crenn on behalf of the city and I apologize for the angle of my camera. But I'll address the First Amendment retaliation claim. And first off the facts in this case were not disputed on summary judgment. And the city has not misrepresented anything in its briefing. The facts are clear that Mr. Hamilton was under criminal investigation contacted Mr. Bowler, who was a detective with the city of Hamilton. Police Department, Mr. Bowler at that time did not pursue anything. Mr. Bowler was later contacted by district attorney helper who he worked with on an ordinary basis, who asked him to review some files. Subsequent to that, Mr. Bowler communicated his concerns to the chief of police, the chief of police and he asked to review the files in this particular case is that yes, the argument is that that was he was not acting out of the chain of command then and not acting outside of what he was instructed to do. That's correct, your honor. So the district attorney contacted Mr. Bowler to review several files. Mr. Bowler testified that when he reviewed the Hamilton file, he then recalled the conversation he had several months prior with Mr. Hamilton. He communicated those concerns to Chief Harris, who was the chief of police at the time. Chief Harris told him to get with another detective, Cox, to see what he knows about it and see if there's any other information. And his, I'll just read the transcript since Mr. Justice has indicated that we've misrepresented the record. Question, okay, so at that point, Chief Harris is directing you to obtain whatever information you can on it. Answer, affirmative response. Question, and turn it over to the district attorney helper, correct? Yes. So during the course of this invest, it was an investigation that at the beginning, Mr. Bowler might not have been the investigator assigned to the case, but eventually he was acting under the instruction of the chief of police to coordinate with district attorney helper. So I think the lane standard, it's clear that the speech was made by an employee in the furtherance of his ordinary job responsibilities as a detective. It sort of struck me like he was acting as a whistleblower in a way. But in Handy Clay, the employee issue there was also sort of acting as a whistleblower. And your honor, I think Handy Clay is distinguishable because as it was and the opinion was very specific. The protected speech in that case related to the record clerk's concerns that there was improper use of city funds. Whistleblowing. Whistleblowing about something that was completely unrelated from her job duties. The court in that opinion, your honor said that her speech related to whether information was intentionally being withheld for pursuant to records request would not be protected because that was something that would be in the ordinary scope and course of that employee's duties. So I don't think Handy Clay is applicable at all. And then also Mr. Justice referenced the Barrow opinion. In that case, police officers coordinated with the FBI. It was not in their ordinary course of duties to with the district attorney in a case that he was investigating at the request of the district attorney at the request of the chief of police with the local prosecutor who Mr. Bowler ordinarily worked with. Ms. Crane, I'm still trying to figure out what happened here. It's kind of interesting. The district attorney dismisses a felon in possession case simply by having Mr. Hamilton's attorney's gun into your department. So, it does kind of look like there was a setup here that maybe the gun was purposely given to Mr. Hamilton to repay the rent to get rid of an eviction action. Where did the gun go, by the way? Do you know? After it was given to the department back to Mr. Anderson? I don't, your honor. I don't think that those facts were ever developed in the case. The city conceded that speech regarding potential misconduct would be of public concern. But I don't know the specific facts regarding the underlying criminal prosecution of Mr. Hamilton. In the end, Mr. Sutton gets his job back. Am I correct on that? Correct. But your honors, do you have any further questions? I don't think I have anything else to add outside of what's already in our briefing. Any questions? I had a question about the defamation claim. I think Mr. Nolan is going to handle that. Is that right? Yes. And the only other claim, Mr. Justice didn't address it, but there's also a due process claim he appealed with respect to the city. I'm happy to address that if your honors have any questions. I don't. Do you? Okay. No, I don't think so. We'll, you've briefed that and we can take a look at it. Let's move to Mr. Nolan, who's going to address the defamation, I guess. Thank you, your honors. Thank you. Good morning, your honors. I'm Mark Nolan and I represent Joseph Cox and Shane Dunning. So, and I am going to address or at least what I can in seven minutes about the defamation claim. And essentially here, the court granted our motion for summary judgment. This is a de novo review with the presumption of correctness to the record below. And there's no way I can summarize everything in seven minutes. But essentially there's three issues. Was the plaintiff appellant a public figure? Were the statements made by Cox and Dunning made with actual malice if he was a public figure? And has the appellant plaintiff proved any harm as a result of those statements? Is there anything consequential to the difference between a limited purpose public figure and a public figure for purposes of this case? No, your honor. Okay. And I will say if the court found that Mr. Bowler was not a public figure, even a quasi public figure, that he was just a citizen, even the standard under Tennessee, which the court cited from Brown versus Christian Brothers, the defendant still prevails because in order for the plaintiff to prevail, even if they're not a public figure, there has to be a statement made. It has to be made with the knowledge that it was false and defaming or made with reckless disregard for the truth. So, and that there's damage resulting from it. So, even if he's not, the plaintiff doesn't prevail because there's, what's missing is two things. That it's made with a reckless disregard for the truth. There's information in the record that shows that the, and we're talking about the statement that the plaintiff stole sick time. He had been off because he had cancer. He had missed a lot of time from work. And at the Fairview Police Department, they were publishing just kind of like on a bulletin board, like a list of everybody that worked there, kind of like a roster and how much sick time they had, vacation time. It was updated periodically. And it was available for other officers to go check their own or look at somebody else's. If I might, Mr. Nolan, so you accuse a police officer of stealing public money and there's nothing defamatory about that. Well, the reason I say there's nothing defamatory about it, in the court in their brief talks about what does really stealing sick time mean? Does it mean that he falsified a record or that the I think the undisputed facts are, and it's cited in the record and in the brief, that he was taking more time than he had accumulated. And what the proof ultimately determined was that the police chief knew it and said, we're not just going to take his time away. So the police chief was choosing to disregard that because of his circumstance of being out for been allowed. And so for my clients to say it appeared that he was using more time or stealing time, there was actual proof that that was true. And the part B to all of this is, when you ask the plaintiff, what was the effect on that statement to you? Did you get disciplined? No, I didn't. Did you get demoted? No, I didn't. Did you get investigated? No, I didn't. Did the county commissioners who heard about it do anything to you? No, they didn't. And so nobody, the plaintiff was asked, do you have anybody that has an opinion that of your reputation that changed as a result of hearing this? And the answer was no. And so that kind of goes to the third part of the argument. I keep you on the second part for a minute. Was there a history? Was there a record of a history of one of officers reporting other officers for supposedly stealing leave time? If there was a history of that, I don't know. The only thing that came up in the depositions was that there had been another officer who had been off for other medical reasons. And in his case, the sick time was deducted and he ran out of time and people, other officers had to donate time. And one of the facts that I don't think you mentioned, but if a stranger to this whole thing walks up, looks at the board and says, gee, I don't think the math adds up for Bowler. It looks like he's had, he's getting too much time. That's one thing, but these two are not strangers to this transaction. I mean, they had a pretty significant grudge against Bowler. And how do we factor that into whether what they were doing was negligent or maybe reckless because there was an ax to grind? Well, and I think when you look at the district court's summary of all the facts, the court points out that there's a lot of comments that are going on in the department, whether it's by Cox and Dunning or Mr. Bowler himself that are being made. And so they didn't like each other. I mean, I'm not sure that helps. They didn't like it. I just, I feel like that has to inform the, the recklessness analysis if there's a history of dislike. And so there's sort of a motive to potentially falsely report someone or report someone, even, even if the facts don't necessarily back it up. Well, and that's where I would say that it's not, I think the statement is falsely because there, there is proof to show that Mr. Bowler was the other officer and he was not losing the time. So that's the distinction. I think that was the distinction that started the question was we knew, and I don't remember the other officer's name, we knew that other officer so-and-so had missed a lot of time and had to borrow sick time from other people because he ran out and Mr. Bowler didn't. And so stole, if that's because there's no real definition of stealing sick time, doesn't necessarily mean that Mr. Bowler was falsifying records, but it was, it was clear that he was not, he was using more time than he was allowed. And as a result of their statement, he didn't suffer any damage. And Mr. Justice- Is there not, is there defamation per se under Tennessee law? I mean, isn't, it would be an accusation of theft, you know, most states would be, you would presume damage, wouldn't you? I don't, I don't know that your honor. And so I don't want to say that. I mean, the, the, the law in Tennessee says you, you must prove damage and what the- In every defamation case? Yes. Actual damage. Yes. And so what the plaintiff wants to argue is essentially the, that ain't right argument. Yes. You asked me about all these things and I answered no about showing the damage, but Mr. Justice would like to say, and the plaintiff would like to say to the jury, we know that just ain't right. So you can assume damage and that's not true. The- Okay. All right. Thank you, counselor. We will hear from counsel for the appellant on rebuttal. Just briefly about the slander issue. I would submit that the, the defendant's actual motive can be inferred circumstantially from their, their, their recklessness can be inferred from their actual motive. The fact that there was an ax to grind is circumstantial evidence that they were acting not just negligently, but, but recklessly. And specifically they were accusing him, I think it was referred to as dirt. The, the accusations against him, they accused him of failing to report sick time, which implies that he's got some obligation to report. And ultimately the chiefs told him, no, he, he does not have an obligation to report. What was the evidence of the motive though? It was that, that would be circumstantial as well, right? Well, Cox specifically talked about how he went over the edge a little bit, how he was, he felt like a bowler had kicked his friend in the nuts and he was basically trying to get back at him. And that was, again, they were mad about him reporting them for the Hamilton incident. So did he say, I don't remember this. Did he specifically testify that he wanted to get back at him in so many words? Yes, sir. And so that I would submit, he basically did admit to it. And the quotations are in the brief, but on this, on this first amendment issue, I would just submit that the city is sort of employing the wrong legal standard when they just talk about things like, well, it's a police officer's job to work with the district attorney. That would be, well, I heard the city to say, and maybe you can respond to this, but they said that there was a very specific request by the police chief and the prosecutor, at least the police chief to look at, to review these files, among them the Hamilton file. And as a result of that, he looked at them and then reported. Is that not correct? It's not correct. And initially what happened, and this, these conversations happened in several stages. Initially he talked to the, to his higher ups in the department. We don't say that that was part of his job duty. When that didn't work, he, in answer to your question, he came upon this, not because the district attorney had asked him to investigate or review anything, but because she had asked him essentially to pull some records for her. And the only reason he did that, that was not even part of his ordinary duties. The only reason he did that was the normal records lady was out due to turmoil in the department. So that wasn't his duty. He was not asked at that point. The point about him being asked by the chief to investigate is true, but it's misleading because at the point when we're saying he spoke as a citizen, there was no chief of police. The chief came back two days after he blew the whistle. And at the time he was under the impression that the reason the chief had come back and the reason there was a sheriff investigation starting was because of his whistleblowing. And the chief basically didn't know what, what it was about. And so he said, Hey, it may have to do with my whistleblowing to the DA. So, and at that point, the chief did basically tell him to sort of get his thoughts together, told him to, to investigate it some more. And he did do some very limited investigation at that point. And then just sort of recap and get, get his thoughts in Um, the key question in this case, I mean, you may think as, as a general rule, maybe police should talk to the, to DAs, that sort of thing. The key question for this appeal is whether any reasonable juror is whether every reasonable juror would conclude that what he did in this case was part of his ordinary duties. And with the facts that we've shown and the factors that we've shown, I just submit that that's very far-fetched. With that, I'm out of time. I do urge reversal and thank you all for your time. Thank you, counsel, for your argument. And, and, uh, we will, um, uh, consider the, the case and issue an opinion in due course. So thank you for your arguments.